## GAYTIME FROCK CO. v. LIBERTY MUT. INS. CO.

### No. 8625.

Circuit Court of Appeals, Seventh Circuit.

April 26, 1945.

Harold A. Fein and George A. Gordon, both of Chicago, Ill., for appellant.

James J. McKenna and Henry H. Koven, both of Chicago, Ill., for appellee.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Plaintiff operates retail ladies wearing apparel stores in Chicago, Philadelphia, and other cities. It sued defendant on a fidelity bond to recover for inventory shortages claimed to have been caused by the dishonesty of its employees at five of its stores. The District Court, upon a trial without a jury, at the close of plaintiff's case, concluded that the evidence was not of such quality and character from which an inference of fraud or dishonesty of plaintiff's employee or employees could be drawn, and held for defendant and entered judgment for costs against plaintiff. To reverse the judgment plaintiff has appealed.

The bond relied upon was issued by defendant on November 6, 1941, but was effective September 30, 1941. It insured plaintiff against losses of money or other personal property including inventory shortages to the extent of $5,000 on each employee, sustained through theft or any other dishonest act or acts of an employee or employees. The bond also provided that in case a loss was caused by the fraud or dishonesty of an employee, and the insured was unable to designate the specific employee causing the loss, the insured should nevertheless have the benefit of the bond provided the evidence reasonably established that the loss was in fact due to the fraud or dishonesty of the employee.

The record discloses the manner in which plaintiff conducted its business, the system and routine concerning the daily inventory, bookkeeping, and the general controls and accounting system, the assignment of its employees to their respective duties, and the manner of inventorying, receiving, shipping, keeping and reporting its stock of merchandise. There was evidence as to the manner in which plaintiff protected its stores against burglaries and shoplifting, and there was evidence tending to prove that on October 2, 1941, and on certain other dates up to and including January 2, 1942, inventories were taken in the "Pin Money Dress Department" and in the dress and coat departments of the Philadelphia store indicating a shortage of $1,751.84 in the dress departments and $4,205.17 in the coat department, or a total of $5,957.01, and the claimed shortages in four Chicago

stores was $6,243.71. In addition, plaintiff offered to prove what constitutes normal shrinkage and allowance for shoplifting in similar type businesses in Chicago and Philadelphia.

The proof pertaining to a loss at the Chicago Avenue store differed from the evidence relating to the inventory shortages. It appears that at about 9 o'clock on the evening of August 29, 1942, plaintiff's porter was instructed by plaintiff's manager to lock the outer back door of the store. He took a key from the manager's desk and proceeded to carry out the manager's order. It also appears that in the rear of the store there was a storeroom, the front of which was screened with wire mesh, having no exit leading into the alley, but there was a door leading into the alley adjoining the storeroom. At about the same time a saleslady unlocked the door to the storeroom and counted 39 dresses stored therein, after which she walked out of the storeroom, locked the door and placed the key on the manager's desk. While she was counting the dresses, the porter was in the rear of the store, vacuuming the floor. After leaving the storeroom she went to a washroom and within three or four minutes after she came out of the washroom she noticed that all the dresses in the storeroom were gone and that the porter was still in the rear of the store. She immediately reported the disappearance of the dresses to the manager, who went to the storeroom, found the door open and the key to the door lying on the floor. The porter was arrested and charged with having stolen the dresses, but was found not guilty. The store employed a manager, four girls, and the porter. There was no affirmative evidence that the porter or either of the other employees had stolen the dresses, nor was there any evidence as to where, in the store, the manager and the other three girls were at the time of the disappearance of the dresses.

It is upon this state of the record that plaintiff claims that the court erred in finding for defendant. The argument is that the evidence and the inferences from the evidence are sufficient to show a shortage supporting an inference of theft, and Wolf v. Ætna Accident & Liability Co., 183 App. Div. 409, 170 N.Y.S. 787, is cited.

 Concededly, to establish defendant's liability, it was necessary that plaintiff prove that the inventory shortages were caused by fraud or dishonesty of plaintiff's employees. Of course, it was not necessary that the plaintiff's proof should establish facts sufficient to convict the employee or employees of larceny, but in our case there was no direct or affirmative proof at all that plaintiff had suffered any loss by a theft or other dishonest act of any employee. To be sure, the fact that the shortages were caused by the dishonesty of plaintiff's employee or employees may be established by circumstantial evidence, but the evidence to establish that fact must be of such a nature that it is the only conclusion that can fairly or reasonably be drawn, that is to say, such evidence must fairly and reasonably exclude any other explanation.

In the Wolf case the policy insured against loss by theft. It appeared that a jewel had been placed in a particular receptacle from which only plaintiff and his wife were authorized to remove it. The evidence showed that neither plaintiff nor his wife removed the jewel. The court held the evidence was sufficient to show a loss under circumstances which supported an inference of theft. We believe that case is not applicable here. All that was required in the Wolf case to establish defendant's liability was proof that the jewel had been stolen. The court concluded that under the circumstances shown by the evidence, it was reasonable to infer that the jewel had been stolen. In our case the proof must be such as to warrant an inference of fraud or dishonesty, not generally, but on the part of an employee or employees; consequently, proof from which an inference of theft generally may be drawn is not, in our opinion, sufficient to allow an inference of fraud or dishonesty of an employee or employees.

We are fortified in our conclusion by the language used in Cobb v. American Bonding Co., 5 Cir., 118 F.2d 643. In that case the court said that the fact that plaintiffs showed inventory shortages from time to time in their stores was not enough to establish that such shortages were due to dishonesty of an employee or employees, and held that such evidence created no more than a surmise or suspicion that some of the shortages reflected by the inventories might have been due to dishonesty on the part of an employee or employees, and said that verdicts may not rest upon guess or conjecture, and that where the probative force of all the evidence of plaintiff does

696

not go beyond the point of creating a mere surmise or suspicion, it becomes the duty of the trial court to instruct a verdict for the defendant.

Moreover, it is clear from what we have said that the sole question here involved, revolves about the propriety of the inferences and conclusions drawn from the evidence by the trial judge, who had the primary function of finding the facts and choosing from among conflicting factual inferences those which he considered most reasonable. Under such circumstances our power is limited to a determination of whether those inferences and conclusions have any substantial basis in the evidence. If such a basis is present the process of judicial review is at an end, Commissioner of Internal Revenue v. Scottish American Investment Co., 323 U.S. 119, 124, 65 S.Ct. 169, and the finding of the District Court must be accepted by this court, Commissioner of Internal Revenue v. Court Holding Co., 1945, 323 U.S. ——, 65 S.Ct. 707. And even where there is no dispute about the facts, if different reasonable inferences may fairly be drawn from the evidence, we are forbidden to disturb the findings based on such inferences unless they are clearly erroneous. Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123 et al., 5 Cir., 137 F.2d 176.

We believe that the inferences and conclusions of the District Court have substantial basis in the evidence, hence they are not erroneous; consequently, the judgment must be affirmed. It is so ordered.