HUMBLE OIL & REFINING CO. et al. v. ROMERO.

ROMERO v. HUMBLE OIL & REFINING CO. et al.

No. 13505.

United States Court of Appeals
Fifth Circuit.

Feb. 21, 1952.

Charles Janvier, Tinsley Gilmer, New Orleans, La., John Claude O'Quin, Jr., Shreveport, La., for Humble Oil & Refining Co. and others.

Warren M. Simon, New Orleans, La., Lawrence P. Simon, New Iberia, La., for Mayo ·Romero.

Before HUTCHESON, Chief lJudge, and RUSSELL and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

Brought to have an oil, gas and mineral lease declared null and void, for abandonment, failure of consideration, and refusal to develop the property,[1] and. for damages and attorneys' fees under Act 168 of the Louisiana Legislature of 1920, LSA–R.S. 30:102,[2] the suit was expanded to include a claim for relief under paragraph 9 of the lease, "The Judicial Ascertainment Clause".[3]

Defendants filed a motion to dismiss and, subject thereto, an answer. Their motion to dismiss was overruled, and the case was fully heard by the court on the issues joined.

Rejecting plaintiff's claim, that the lease was null and void, or had lapsed, and that

---

1. Among other matters pleaded was the fact that on Nov. 23, 1948, plaintiff made demand upon defendant Humble Oil & Ref. Co. for additional drilling, and the defendant answered that letter as follows:

   "Your letter of Nov. 23, 1948, was forwarded to our Law Department for consideration, and since that date we have been advised that Humble Oil & Refining Co. has complied with the terms and conditions set forth in said lease. We therefore do not contemplate any further operations on the land covered thereby."

2. As pertinent here, this act provides for damages and attorneys' fees when a lessee refuses to cancel from the public records a mineral lease *lapsed* by expiration of the primary term or termination of any of the exceptions in said lease by reason of failure on the part of the lessee to comply with the condition therein for the prevention of forfeiture.

3. "After production of oil, gas, sulphur or other mineral has been secured from the land covered hereby or land pooled therewith, this lease shall not be subject to forfeiture or loss either in whole or in part for failure to conduct operations in compliance with this contract except after judicial ascertainment that lessee *has failed to conduct such operations and* has been given a reasonable opportunity after such judicial ascertainment to prevent such loss or forfeiture by complying with and discharging its obligations as to which lessee has been judicially determined to be in default."

he was entitled to damages and attorneys' fees, the district judge made findings of fact and of law in the form of· an opinion,[4] and entered a judgment for plaintiff under the Judicial Ascertainment Clause. This judgment required defendants, within "60" days, to satisfy the court that they intended to develop further the leasehold upon pain of having the lease cancelled with the exception of 20 acres around Romero No. 2 well.

Defendants appealed from this order. Plaintiff cross-appealed because of the failure to allow attorneys' fees.

Insisting that no cause of action for breach of the implied covenants for developments was stated, none proven, appellants point: to the admitted facts of record, that defendants have drilled three wells, two of them dry, and have expended in all on the development of the property $500,000; to the geological testimony, that further drilling would be unprofitable; and to the finding [5] of the court thereon.

On his part, appellee relies: on the testimony of the geologist Courtney, that a prudent operator would, and the statement of Rebstock that in reliance upon Courtney's opinion, he will, drill if and when the land is free of the lease; on the findings and the order nisi of the court; and on the admission made in the brief filed by defendants in the trial court.[6] So relying he insists: that the judgment in his favor should be affirmed; and that, because of the error in not allowing him the attorneys' fees sued for, it should be amended to add $2500 therefor.

Because in his brief but clear opinion, the district judge has sufficiently stated the controlling facts and the applicable principles of law, it will not be necessary for us to restate either. It will be sufficient to say: of the fact findings that they are not clearly erroneous; and of the principle applied that it is purely equitable and must, therefore, be applied to work equity and not inequity to either lessor or lessee.

Taking its real rise in, and deriving its force and vigor from, the exhaustively considered and thoroughly reasoned opinion of Judge (later Mr. Justice) Van Devanter, in Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801, a case from Kansas, and reinforced by its full approval in the opinion of the Supreme Court, in Sauder v. Mid-Continent Corp., 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255, another Kansas case, the principle has been generally fully accepted and faithfully applied, nowhere more so than in the great oil producing states of Texas and Louisiana.[7] The law and the facts standing thus, there remains only, on appellants' claim of error, for us to determine

---

4. 93 Fed.S. 117.

5. "Defendant and intervener rely on the testimony of three geologists all of whom maintain that Courtney has incorrectly interpreted the geological data on the Romero tract and that his correlation of the logs of the wells on the Romero and Germany tracts is in error. It also appears that at least one of intervener's geologists has had years of experience with the Little Bayou Field, whereas Courtney admittedly devoted but three weeks to his study of the oil and gas potential under the Romero property.

If the decision in this case were to rest solely on the opinion of geologists, there is little question but that the defendant and intervener would prevail. Their geologists have analyzed the testimony of Courtney and have shown where in their opinion he fell into error. Their numerical superiority as well as their extended experience with the Little Bayou Field weigh well in their favor. * * *"

6. "We recognize that the Plaintiff could, upon sufficient allegations of fact, and with a proper prayer, state a claim upon which (if proved) relief could be granted; and if the Court were convinced that a reasonably prudent operator would drill an additional well, it would order that such a well be drilled (or in default thereof) that the lease be cancelled except as to the 20 acres surrounding the producing Romero #2 well."

7. Carter v. Arkansas-Louisiana Gas Co., 213 La. 1028, 36 So.2d 26; Prince v. Standard Oil Co., 147 La. 283, 84 So. 657; Amerada Petroleum Co. v. Doering, 5 Cir., 93 F.2d 540, 114 A.L.R. 1385; Armstrong v. Skelly Oil Co., 5 Cir., 55 F.2d 1066; Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634; Cowden v. Texas Development Co., 5 Cir., 89 F.2d 947; Haynes v. S. W. Natural Gas Co., 5 Cir., 123 F.2d 1011; Hull v. Magnolia Petroleum Co., 5 Cir., 119 F.2d 123.

whether, in entering the order appealed from, the district judge made equitable application of the controlling principle to the facts, or if he did not, whether by modification it can be made equitable.

If the district judge had found that the plaintiff had shown, by a preponderance of the geological testimony, that a reasonably prudent operator would drill an additional well or wells, and had based his decree thereon, the decree, as distinguished from the opinion, would have squared with the controlling equitable principle applicable to cases of this kind. Since, however, instead of finding and so basing his decree, it is apparent from his opinion that he did not so find and so base it, we are of the opinion that the decree was not equitably framed and requires modification.

Based, as it was, not upon the preponderance of competent geological opinion, that a theoretical reasonably prudent operator would drill an additional well or wells, but entirely upon the assurance of Rebstock that if he could obtain the property free of defendants' lease, he would drill as recommended by Courtney, the decree should have contained a provision in effect insuring the carrying out of that assurance. Otherwise, notwithstanding the large sums already spent by them and the preponderant geological testimony in their favor, the defendants might well find themselves at the end of the sixty days fixed in the decree deprived of their lease upon a purely fictitious hypostasis that Rebstock would drill, based upon a prophesy by him, put forward without incurring any obligation to perform it, and serving solely the purpose of Romero's need to bolster the testimony of his geologist.

It cannot be too often or too clearly stated that a decree in a situation of this kind must be equitable to both lessee and lessor. Since this is so, it is plain, we think, that it would not be equitable to permit the merely unsupported statement of a witness, that he would drill if and when he got the lease, to furnish the basis for an absolute order to cancel *nisi*.

The decree will therefore be amended to provide in substance that if, within the sixty days given defendants to satisfy the court that they intended to drill upon the leasehold, Rebstock furnishes satisfactory assurances that he will drill, the lease will be cancelled with the exception of twenty acres around the Romero No. 2 well, unless, within ten days thereafter defendant and intervenor satisfy the court that they desire to and will further develop the leasehold. As thus modified, the judgment will be affirmed.

Of appellee's claim that there was error in refusing to allow attorneys' fees, it is sufficient to say that since the evidence showed, and the court found, that the lease had not lapsed, and that plaintiff was not entitled to have it cancelled of record as lapsed, the statute invoked by appellee has no application, and his claim for attorneys' fees was properly refused.

Modified and affirmed.