110 So.2d 119

**S. E. JOHNSON, Sr.**

**v.**

**LeRoy SMALLENBERGER.**

No. 43752.

March 23, 1959.

Craig, Magee & Spann, Mansfield, LeRoy Smallenberger, Shreveport, for defendant-appellant.

Colvin & Hunter, Mansfield, for plaintiff-appellee.

FOURNET, Chief Justice.

The plaintiff, S. E. Johnson, Sr., having executed an oil, gas and mineral lease covering his 17.19-acre interest in a tract of 110 acres located in Section 20, Township 14 North, Range 15 West, DeSoto Parish, in favor of defendant, LeRoy Smallenberger, instituted this suit seeking cancellation of the lease because of alleged failure to drill or to pay the annual rental on the due date, as provided in the agreement, and also for an award of $1,500 as attorney's fees under provisions of R.S. 30:102, due to defendant's refusal to direct the cancellation of the document. The defense is that the lease is still valid and subsisting. From a judgment in favor of plaintiff, decreeing cancellation of the lease's inscription in the Parish records and awarding attorney's fees of $1,000, the defendant prosecutes this appeal; the plaintiff has answered the appeal, praying that the attorney's fees be increased to $1,500 "in view of the appearance on appeal."

The principal facts are not in dispute. The subject document was executed on May 6, 1955, and contained the provision

that "If operations for drilling are not commenced on said land on or before one year from this date, *the lease shall then terminate as to both parties* unless on or before such anniversary date lessee shall pay or tender \* \* \*" etc. (Emphasis supplied.) No drilling operations were commenced and no payment was received by plaintiff on or before May 6, 1956; it appears that prior to that date, in defendant's offices, a check for $17.19, to plaintiff's order, was prepared for signature and a deposit slip in that amount was filled in for the credit of plaintiff's account at the Mansfield Bank & Trust Company (named in the lease as depository for rentals), but these papers were placed in the S. E. Johnson office file and no further action was taken.

Mid-Century Oil and Gas Company, which at the time held leases on more than half of the drilling unit composed of the whole of Section 20, including a lease on 400 acres also owned by plaintiff in that same Section 20 (but not including the tract covered by defendant's lease), on August 2, 1956, obtained a permit to drill "S. E. Johnson Unit Well No. 3" on the 400-acre tract, and that well was completed as a producer in the Pettit formation about September 11, 1956. The plaintiff then wrote defendant, mentioning the fact that the delay rentals had not been paid in accordance with the terms of the lease and requesting him to execute and file a release; an investigation in defendant's office re-

vealed what had happened, and defendant promptly forwarded the amount of $17.19 as rental to the Mansfield Bank & Trust Company for plaintiff's account. This was refused by plaintiff. Efforts on behalf of defendant to obtain a ratification of the lease were also unsuccessful, and the instant suit followed shortly.

Counsel for the defendant contends (a) that the lease was kept in force by offer of payment of rentals just as soon as defendant learned of "the mistake" that had been made, because equity requires that the lessor should promptly inform the lessee of a mistake and give the latter an opportunity to correct it immediately, before forfeiture can be demanded (plaintiff is said to have been aware of the non-payment very shortly after the anniversary date); and (b) that plaintiff is estopped to now require cancellation of the lease because after he knew of the non-payment he saw the well begun, watched its daily progress (plaintiff's home being situated in Keatchie, within a stone's throw of the well) and was often engaged in conversation with Harvey Broyles, the agent who had procured the instant lease for defendant, as well as with John Morgan, a friend and neighbor of plaintiff and also the law partner of the defendant (their offices being maintained in Shreveport)—yet remained silent until he was sure the well was a producer and *then* demanded cancellation of the lease; the defendant, mean-

while, believing the lease to be in force, having obligated himself under an operating agreement between Mid-Century Oil and Gas Company and various independent lease owners (including defendant) to pay his pro rata share of the drilling costs for plaintiff's 17.19 acres. The cases relied on as supporting these propositions are Jones v. Southern Natural Gas Co., 213 La. 1051, 36 So.2d 34, and Risinger v. Arkansas-Louisiana Gas Company, 198 La. 101, 3 So.2d 289.

Counsel's error arises from the fact that they rely on statements taken from the above cases and attempt to apply them to the instant case, where the factual situation is different. The Jones case is clearly inapplicable; it involved an erroneous calculation by one of the assignees of a mineral lease as to the area covered by his designated portion, this miscalculation having resulted in payment (and acceptance) of a lesser amount than was actually owed as delay rental; but under the circumstances this was held (by the majority view) to be an excusable and mutual mistake, and not sufficient to "demand a forfeiture [of the lease so far as it affected the defendant-assignee's portion] for nonpayment of the rental within the time stipulated." [213 La. 1051, 36 So.2d 38.] The Risinger case, relied on particularly for the plea of estoppel and said to be so similar factually that portions are paraphrased in defendant's brief, is equally inapplicable. A perusal of that case shows its holding to be that an erreoneous method of payment, by deposit in the wrong bank, of a stipulated yearly royalty of $200 for a gas well (there being no provision that the lease would automatically terminate for its non-payment, delay or error in payment), was "merely a failure to perform with literal exactness a personal obligation and not a failure to perform a condition precedent to the continuance of the lease." 198 La. at page 116, 3 So.2d at page 294.

■ Under the facts of the instant case, the lease was at an end immediately upon non-payment of the rental due on May 6, 1956. According to the plain provisions of the type of contract known as the "unless" lease, as universally interpreted, the lessee is under no duty either to drill or to pay delay rentals; if he either drills or pays, the lease remains in effect, but if he does neither, it ipso facto terminates at the time of default. See 2 Summers, Oil & Gas, Perm.Ed., Sec. 452, pp. 494–499. "The clause * * * is used, not for the purpose of fixing a duty upon the lessee to drill or pay, but to state a limitation upon which the lease terminates if these acts are not performed." Ibid., pp. 494–495.

■ The estoppel sought to be invoked against plaintiff is totally lacking in facts to support the plea; the substance of defendant's argument is that the plaintiff knowingly permitted the defendant to bind him-

self for participating costs in the drilling of the well on Section 20—the while intentionally remaining silent concerning the failure of defendant to pay the delay rental. A fair analysis of the testimony indicates that plaintiff's first intimation that defendant might think the lease covering plaintiff's 17.19 acres was still in effect came on the night of September 8, 1956, at the well site, where many persons were congregated during a core test and preparatory to setting casing, as the result of a remark made by John Morgan. Plaintiff's call at Morgan's home resulted in a telephone call to the law offices in Shreveport, which disclosed that the rental check had never been signed. It also appears that an operating agreement, dated June 30, 1956—a private contract, unrecorded, to which plaintiff was not a party—was confected between Mid-Century Oil and Gas Company and certain private owners of oil and gas leases, including the defendant (who owned leases covering four of the parcels affected by the agreement), the purpose being to develop all of Section 20 to a specified depth; liability for costs and expenses resulting from the operation was to be shared by the parties in certain proportions, but the burden of paying rentals fell entirely on the party required to make payment thereof, and in event of failure to make proper payment of any delay rentals where such rental was required to continue the lease in force, there was no money liability on the part of the party failing to pay such rental—his obligation being merely to make a bona fide effort to secure a new lease covering the same interest. Therefore, under the terms of the very agreement on which defendant relies as having bound him, he was not obligated for participating costs in drilling the well so far as the 17.19-acre interest was concerned; moreover, it should be noted that all payments made by him were by checks dated September 28 and November 27, 1956 (totaling $3,221.08), after defendant knew that the subject lease had terminated. It is well settled that to give rise to estoppel by silence or inaction, there must be not only an opportunity to speak but also an obligation or duty to do so; "There must be some element of turpitude or negligence connected with the silence or inaction by which the other party is misled to his injury" (19 Am.Jur. 663–664, Verbo Estoppel, Sec. 55); and the plaintiff was neither under a duty to notify the defendant that the latter had failed to pay the amount of rental nor to give him an opportunity to repair the lapse. Defendant's efforts to place such a duty on plaintiff can avail him nothing.

In the lower court's judgment, an award of $1,000 was made "as a reasonable attorney's fee for the bringing and prosecution of this suit in the District Court." As stated above, the plaintiff has asked that this amount be increased to $1,500, and we think the additional time and labor in-

volved in making appearance on this appeal warrants the increase.

For the reasons assigned, the judgment of the District Court is amended by increasing the award for attorneys' fees to $1,500, and, as thus amended, it is affirmed.