VIOSCA, Justice.
Clayton T. Rushing and Mrs. Jewel Por-terfield, plaintiffs and appellants, lessors, seek cancellation of an oil, gas and mineral lease on seven acres more or less of land in DeSoto Parish, Louisiana, executed by them in favor of Dr. Edward P. Griffin, Jr., defendant and appellee, lessee.
The lease which is attached to and made part of the petition is dated June 9, 1955 and states in the opening paragraph that it is between “Clayton T. Rushing, wife of Irene Isgate Rushing * '* * and Jewel Rushing Porterfield, a widow, * * * lessor (whether one or more), and Edward P. Griffin, Jr., a single man, lessee * * * ”. Although Clayton T. Rushing is stated to be the wife of Irene Isgate Rushing he is, in fact, her husband. The lease is signed by Clayton T. Rushing and Jewel Rushing Porterfield. Irene Isgate Rushing’s signature does not appear thereon.
The lease is for a primary term of five years, and it contains the following provision :
“If operations for drilling are not commenced on said land on or before one year from this date, the lease shall then terminate as to both parties unless *230 on or before such anniversary date lessee shall pay or tender to lessor or to the credit of lessor in Commercial National Bank at Shreveport, Louisiana (which bank and its successors are lessor’s agent and shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of said land or the rentals) the sum of Seven and No/100 Dollárs ($7.00), (herein called rental) which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rental may be made by the check or draft of lessee mailed or delivered to lessor or to said bank on or before such day of payment. * * * ”
Plaintiffs allege that drilling operations were not cpmmenced within one year from the date of the lease and that defendant did not properly pay or tender payment of the renewal rental of $7 within the time fixed in the lease or at any other time. They allege that under date of June 2, 1956, defendant forwarded to Commercial National Bank of Shreveport, Louisiana, a check in the amount of $7 payable to Clayton T. Rushing, Irene Isgate Rushing and Jewel Rushing Porterfield; that under date of June 7, 1956, Clayton T. Rushing returned the check to defendant informing him that there was an error in the names of the payees; that on August 2, 1956, Clayton T. Rushing again advised defendant of his failure to pay the rentals properly; that under date of January 16, 1957, lessors demanded a release of the lease in view of the nonpayment of rental and that on March 27, 1957, their attorney demanded a release of the lease, all of which demands were ignored.
Plaintiffs further allege that the lease rights have a value in excess of $7,000 and that they are entitled to recover attorney’s fees in the sum of $1,500 incurred by them in bringing suit. They pray for judgment ordering the cancellation of the lease, awarding the sum of $1,500 as reasonable attorney's fees and reserving their rights to claim an accounting as a result of production and damages under LSA-R.S. 30:-102.
In answer to the suit defendant alleges that he properly paid the delay rentals in the sum of $7 before the expiration date and that the error in making the check payable to three persons instead of the two lessors was the error of Commercial National Bank of Shreveport, the depository named in the lease and the agent of plaintiffs. Defendant alleges that he returned to plaintiff, Clayton T. Rushing, the check which had been erroneously made out in the name of three payees instead of two. He accordingly prays that the suit be dismissed.
The district court concluded that all the rentals due and owing under the lease were properly paid and accordingly rendered judgment decreeing the lease to be in full force and effect and dismissing plaintiffs’ suit. From this judgment plaintiffs have appealed.
According to the record in the case, it appears that on or about June 1, 1956, defendant, desiring to pay the delay rentals, went to his bank, the First National Bank in Mansfield, and asked that bank to issue a rental check in payment of the delay rental. That bank, in a letter of transmittal dated June 1, 1956, wrote the Commercial National Bank at Shreveport, the depository named in the lease, as follows:
“Mr. Edward P. Griffin asked us to issue Lease rental check to Mr. Clayton Rushing et als but we noticed that this was payable at your bank so we have issued our Bank Money order No. 37165 in the amount of $7.50 to cover. The $7.00 to be paid to Mr. Rushing and .50^ for service charge.
*231 “When you have issued this check .we will appreciate it if you will return the Oil, Gas and Mineral lease, together with the copy of your check to Mr. Griffin, P. O. Box 432, Mansfield, La.”
On June 2, 1956, the Commercial National Bank acknowledged receipt of the check in a communication reading as follows:
“This will acknowledge your cashier’s check Number 37165 in the amount of $7.50 pajmble to our order for oil and gas lease rental by Mr. E. P. Griffin to be credited to the account of Mr. Clayton T. Rushing and others.
“As instructed in your letter we are returning the lease which was enclosed in your letter direct to Mr. Griffin.”
The Commercial National Bank of Shreveport under the same date issued its check for $7 payable to the order of Clayton T. Rushing, Irene Isgate Rushing and Jewel Rushing Porterfield.
From the foregoing it will be noted that defendant did not comply with the terms of the lease in making the rental payment. The lease provided that “lessee shall pay or tender to lessors or to the credit of lessors in Commercial National Bank of Shreveport, Louisiana” the sum of $7, whereas defendant’s bank, the First National Bank in Mansfield, advised the depository bank that defendant had asked it to issue “lease rental check to Mr. Clayton Rushing et ais” and specifically instructed Commercial National Bank, the depository: “The $7.00 to be paid to Mr. Rushing”. The $7 therefore was never credited to the account of the lessors Clayton T. Rushing and Jewel Rushing Porterfield. Notwithstanding the instructions of the First National Bank in Mansfield to the Commercial National Bank, the money was credited to the two lessors and the wife of one of the lessors.
In Le Rosen v. North Central Texas Oil Company, Inc., 169 La. 973, 974, 126 So. 442, we held that where a married man is the lessor and the deposit is made to the credit of the lessor and his wife, this is not a compliance with the terms of a contract requiring that the deposit be made to the lessor’s credit and we declared the lease terminated. We ruled similarly in Clingman v. Devonian Oil Company, 188 La. 310, 177 So. 59.
It is true that in Jones v. Southern Natural Gas Company, 213 La. 1051, 36 So.2d 34, 38, we overruled the Le Rosen case in one respect. In the Jones case we held:
“ * * * There is ample authority for the 'proposition that considerations of equity may prevent a forfeiture of a mineral lease where the failure of the lessee to pay the full amount of the delay rentals, or his failure to pay it within the time stipulated, is the result of a mistake on his part, and where the circumstances are such that the mistake is a pardonable one, and particularly where the mistake is a mutual mistake on the part of both the lessor and the lessee. In such cases equity requires that when the lessor learns of the mistake he should promptly inform the lessee of the mistake and give the latter an opportunity to correct it immediately, before he, the lessor, can demand a forfeiture for nonpayment of the rental within the time stipulated. * * *
* * * * * *
“Our opinion in the present case is in some respects not consistent with some of the pronouncements made in Le Rosen v. North Central Texas Oil Co., Inc., 169 La. 973, 126 So. 442. So far as the two decisions are inconsistent the former henceforth must be considered overruled.”
In the instant case, the lessors upon learning of the error promptly notified the lessee thereof. On June 7, 1956, still before the due date, Clayton Rushing wrote Dr. Griffin as follows:
*232 “I am returning to you herewith your Lease Rental Deposit No. OR-31217, dated at Shreveport, La., June 2, 1956, in amount of Seven ($7.00) Dollars, payable to Clayton T. Rushing, Irene Isgate Rushing and Jewel Rushing Porterfield, and deposited in the Commercial National Bank, Shreveport, La.
“At the time you acquired leases from my sister, Mrs. Jewel Rushing Porterfield and myself, checks were made to each of us individually, and we would therefore appreciate your making all rental checks payable to us in this manner.
“For your information, Mrs. Porter-field’s address is 1106 Mildred Street, Shreveport, La.”
This was followed by several telephone conversations. Dr. Griffin finally addressed an undated note to Clayton Rushing as follows :
“I am sorry I waited so long but I misplaced the copies of the lease but have finally got them. Your interest was 2.8 acres & Mrs. Porterfield 2.4. I bought a little over 5 acres from you & Mrs Porterfield & the tract contained 7 acres so I paid $7.00 renewals.”
Dr. Griffin admits in his oral testimony that the check which was returned to him remained on his desk for a long time, but says he returned it to Clayton Rushing in the foregoing undated note. This is denied by Clayton T. Rushing whose reply to the undated note reads as follows:
“I have your note, no date, but mailed on July 11, in which you state you mailed Mrs. Porterfield and myself a check for $7.00 covering renewal lease on property at Keatchie, La.
“I assume you mean the Lease Rental Deposit No. OR-31217, dated at Shreveport, La., June 2, 1956, in amount of $7.00 which you deposited in the Commercial National Bank, at Shreveport, and which check I returned to you in my letter of June 7, and requested separate checks for Mrs. Porterfield and myself. Attached is a copy of this letter.
“We would like to get this matter cleared and will appreciate your forwarding another check at an early date.”
Jewel Rushing Porterfield testified that she also wrote Dr. Griffin requesting a new check. Unable to receive any satisfaction from Dr. Griffin, the lessors addressed Dr. Griffin as follows on January 16, 1957:
“You have of record an oil, gas and mineral lease from myself and my sister, Mrs. Jewel R. Porterfield, covering our interest in certain lots in Section 21 and 22, Township 14 North, Range 15 West, DeSoto Parish, Louisiana. I have checked with the depository bank under said lease, namely the Commercial National Bank in Shreveport, Louisiana, and I find that you improperly paid the renewal under said lease, if they were paid at all. We respectfully request that you immediately furnish us with a release of said lease in order that we may lease them again. Of course, time is of the essence and we feel that if you do not execute the release immediately, we will be damaged to the extent of what we can sell the lease for.”
This was signed by both Clayton T. Rushing and Jewel R. Porterfield. Finally, through their counsel on March 27, 1957, lessors made the following demands upon Dr. Griffin:
“We have been retained by Mr. Clayton T. Rushing and Mrs. Jewel R. Porterfield to represent them in obtaining a release of a certain lease executed by them in your favor covering their interest in certain lots in Section 21 and 22, Township 14 North, Range 15 West, DeSoto Parish, Louisiana. *233 You failed to pay the annual delay in drilling rental to the correct depository bank and also in attempting to pay this rental, you added Mrs. Clayton T. Rushing’s name when she did not execute the lease and when she owned no interest in the property at all. You were requested by these parties prior to the rental payment date to properly pay same and you did not do so. Mr. Rushing and Mrs. Porter-field requested a release of the lease in a letter dated January 16, 1957 and you have failed to comply with their request.
“As their attorney, we again request you to execute a release of this lease and call your attention to the provisions of Revised Statutes R.S. 30:102 which allows damages and attorney’s fees for your failure or refusal to release said lease.”
From the foregoing review of the facts it is clear that the lessors in this case gave the lessee ample opportunity to correct the error in the payment of the delay rentals. While they may not have had the right to request separate checks in lieu of one check payable to their joint order, the lessee had no right to make the check payable jointly to the lessors and a third person, the wife of one of the lessors who had no interest in the lease. Notwithstanding repeated requests the lessee made no effort whatsoever to comply with the terms of the lease. We believe this case is similar to Atlantic Refining Company v. Shell Oil Company, Inc., et al., 217 La. 576, 46 So.2d 907, 910, where the error was called to the attention of the lessee, who took no steps to correct it, and where we said:
“The holding in Jones v. Southern Natural Gas Co., supra, cannot avail plaintiff under the facts of this case since by its actions plaintiff has removed itself from the equitable doctrine there announced. * * *
******
“We therefore conclude that under the very terms of the contract between the plaintiff and Furlow, no drilling operations having taken place within the first twelve months or within the extended periods for the years 1944 and 1945, and plaintiff having failed to pay the required amount for the year 1946, the lease was terminated by its own terms. 2 Summers Oil & Gas, Perm. Ed. § 452, p. 497. See, also, Le Rosen v. North Central Texas Oil Co., 169 La, 973, 126 So. 442.”
No drilling operations having been commenced, and the delay rental not having been paid within the first twelve months, notwithstanding repeated demands, we conclude that the lease in this case was terminated by its own terms.
This brings us to the question of attorney’s fees. LSA-R.S. 30:102 provides:
“Whenever an optional oil or gas lease shall lapse because of the termination of the full period within which it may be kept alive by the payment of rentals, or because of failure on the part of the lessee to comply with the condition for the prevention of forfeiture, the lessee shall within ten days after written demand on the part of the lessor furnish the lessor with an acknowledged instrument, directing the cancellation of the lease on the records.
“If a lessee, having been given written notice demanding cancellation of the lease, fails or refuses to comply within ten days, he shall be liable to the lessor for a reasonable attorney’s fee incurred by the lessor in bringing suit to have the cancellation adjudged. He shall also be liable to the lessor for all damages suffered by him by reason of his inability to make a lease because of the non-cancellation.”
The evidence in this case shows that the value of the lease at the time of *234 trial was approximately $5,500. After reviewing the amount of work performed by the attorney for the lessors and considering their services in instituting and trying the suit, a reputable member of the Bar testified that in his opinion the services were worth $1,000 up to the time of trial in the district court and would be worth an additional $500 for services on appeal to this Court. Defendant offered no testimony to the contrary. In Johnson v. Smallenberger, 237 La. 11, 110 So.2d 119, 122, where we ordered cancellation of a lease for failure to pay annual delay rentals we allowed attorney’s fees in the sum of $1,500, which represented' an award of $1,000 as reasonable attorney’s fees for the institution and prosecution of the suit in the district court and $500 for “the additional time and labor involved in making appearance on this appeal.”[1] Plaintiffs have asked for attorney’s fees in the sum of $1,500 and on the basis of the evidence in this record we believe the amount reasonable.
For the reasons assigned, the judgment of the district court is reversed and set aside, and it is now ordered that there be judgment in favor of plaintiffs, Clayton T. Rushing and Mrs. Jewel Porterfield and against defendant Dr. Edward P. Griffin, Jr., decreeing the termination and cancellation as of June 9, 1956, of the oil, gas and mineral lease entered into between them on June 9, 1955, copy of which is attached to and made part of the petition herein, on all right, title and interest of plaintiffs in and to the following described property situated in the Parish of DeSoto, Louisiana:
“An undivided interest in Blocks 3 and 4, T. P. Fullilove Addition, said lots being the same purchased by J. T. Rushing from W. I. F and W. M. Russell by deed dated March 4, 1910, recorded in Book 25 at Page 333. Also all right, title and interest in and to a certain plot of ground with improve'ments described as the old T. C. Adams residence in Keatchie, bounded on the North by property owned or formerly owned by Mrs. Mary Hall; on the South and West by property owned or formerly owntd by the Male Academy and lands formerly owned by W. M. Spell and on the East by property formerly owned by Mrs. A. J. Lacey and E. Schuler, and containing three (3) acres, said property acquired by T. C. Adams from W. C. Johns and later purchased by J. T. Rushing from T. C. Adams on September 7, 1888, by act passed by W. B. Peyton, Notary Public, said deed being duly recorded in Conveyance Book 2 at Page 552 of De Soto Parish, Louisiana.
“For all purposes of this lease the described premises shall be treated as comprising 7 acres, whether there be more or less.”
It is further ordered that the recordation of said oil, gas and mineral lease in the Conveyance Records of DeSoto Parish, Louisiana, on June 9, 1955, bearing Registry No. 243,915 and recorded in Vol. 213, page 41 of the records of said parish be cancelled and erased from said records.
It is further ordered that there be judgment in favor of plaintiffs and against defendant in the sum of $1,500 as attorney’s fees with legal interest thereon from the date of judicial demand until paid.
It is further ordered that the rights, if any, of plaintiff to demand an accounting as a result of production and for damages be reserved. Defendant to pay all costs.
SIMON, J., absent and not participating.

. Awards for attorney’s fees were made in the following amounts in the following cases: Mallett v. Union Oil & Gas Corporation of La., 232 La. 157, 94 So.2d 16, $2,500; Nunley v. Shell Oil Co., 229 La. 349, 86 So.2d 62, $1,000; Wier v. Grubb, 228 La. 254, 82 So.2d 1, $3,000; Wilcox v. Shell Oil Co., 226 La. 417, 76 So.2d 416, $2,500; Eota Realty Co., Inc. v. Carter Oil Co. et al., 225 La. 790, 74 So.2d 30, $4,500.